UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

**ERIC CARTER**  **PLAINTIFF**
**ADC #129514**

V.                    NO. 1:18-cv-00076-BSM-JTR

**JAMES HUDDLESTON,** *et. al.*                **DEFENDANTS**

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I. Introduction

Plaintiff Eric Carter ("Carter"), proceeding *pro se*, contends that his constitutional rights were violated when Defendants James Huddleston ("Huddleston") and Loman Johnson ("Johnson") allowed a potentially deadly weapon to fall into the hands of another prisoner, who used it to attack Carter and seriously injure him. *Doc. 27.* Carter seeks an award of compensatory damages and punitive damages from the Defendants, who are sued only in their individual capacities. *Doc. 27 at 8, 10*; *Doc. 32*.

Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts.[1] *Docs. 46-48.* Carter has filed three Responses opposing their request. *Docs. 52-54.*[2]

Before reaching the merits of Defendants' Motion for Summary Judgment, the Court will review the relevant undisputed facts giving rise to Carter's claims.

---

[1] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

[2] The Court has previously denied Defendant Huddleston's Motion to Dismiss, based on qualified immunity, and his Motion for Summary Judgment, based on exhaustion. *Doc. 25 & 32*.

1.    On July 6, 2018, Carter, an inmate in the Grimes Unit of the Arkansas Department of Correction ("ADC"), was sitting in the chow hall eating dinner with other inmates.  Depo. of Carter, *Doc. 48-2 at p. 14*.

2.    A wheeled push cart, carrying two trash cans, was in the chow hall near where the prisoners were eating.[3]  The push cart had a heavy metal handle on one end that could be easily detached.  This handle was approximately three and a half feet long and weighed approximately twenty pounds.[4]  *Doc. 27 at p. 1*.

3.    Two officers, neither of whom are named as parties in this action, were present in the chow hall watching the inmates, but neither was standing near the push cart.  *Doc. 48-2 at  p. 42-43*;  *Doc. 52*.

4.    An inmate suddenly detached the push cart's metal handle and used it as a weapon to attack Carter, who suffered a deep gash in the top right side of his head.[5]  *Doc. 47 at ¶ 10*;  *Doc. 54 at ¶ 3*.

5.    Carter did not know the inmate who attacked him and acknowledges that it was an unexpected surprise attack.  *Doc. 47 at ¶¶ 11-12*;  *Doc. 54 at ¶ 3*.

---

[3] The record is unclear whether this push cart was routinely in the chow hall or only there because cantaloupe was on the menu, which generated a large amount of waste.

[4] Defendants submitted a picture of the cart.  *Doc. 34* (sealed).  The picture only shows the upper portion of the handle and not where it is affixed to the push cart  It is undisputed, however, that the handle was not welded in place and could be easily removed.

[5] It took ten staples to close Carter's head wound.  *Doc. 27 at p. 1*.

6.  At the time of the attack, Defendant Huddleston was the Food Production Supervisor and Defendant Johnson was the Food Production Manager I.[6] *Doc. 48-1*.

7.  On July 20, 2018, Carter submitted a grievance in which he alleged the push cart's handle should have been "welded and bolted down" to prevent its removal and use as a "deadly weapon." Carter faulted "the food production managers inside the kitchen" for the dangerous condition. *Doc. 12-2 at p. 4*.

8.  On July 26, 2018, as part of the investigation into Carter's grievance, Johnson provided the following answers to questions posed to him:

> (1) Have you every [sic] been advised to get the cart handle that is used for trash cans welded on? *No*
>
> (2) How long as the cart been in the kitchen without the handle being welded on? *As far back as I can remember*.
>
> (3) Is the handle on the cart now welded on? If so, when did it get welded on? *Yes, the day after this incident occurred*.

*Doc. 12-2 at p. 10*.

9.  On August 17, 2018, the Warden advised Carter that, after an investigation into the July 6th incident, the handle had been "secured to the cart" so

---

[6] Huddleston was not working on July 6, 2018; Johnson may or may not have been at work that day. *See* Declaration of Lucy Cockrell, Doc. 48-1 (stating that attendance records showed that neither worked on the date of the incident); Carter Depo, *Doc. 48-2 at p. 40* (testifying that he recalled seeing Johnson on the day of the incident); Carter Response, *Doc. 54 at p. 3* (conceding that he may have been mistaken about Johnson being there).

Any dispute about whether Johnson was working on July 6, 2018 is not material to the legal analysis of Carter's claim.

that it could not be used as a weapon again.  The Warden acknowledged that the cart had been used at the Grimes Unit "for several years without the handle being secured." *Id. at p. 9*.[7]

  10. At the time of the attack, an ADC regulation provided employees with the following direction regarding "security":

> Security is the responsibility of every employee regardless of his/her job classification.
>
> Tools, knives and implements used in an area of the facility must be inventoried and employees must be able to account for such items at all times.  When not in use, use items are also to be locked in a place and manner that will make them inaccessible to offenders.

Ark. Admin. Code 004.00.2-400 (copy attached to *Doc. 54 at p. 15-16*).

## II. Discussion

The Eighth Amendment requires prison officials to "provide humane conditions of confinement," which includes "tak[ing] reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). However, because the prison environment is inherently dangerous, "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into

---

[7] No evidence has been presented that, prior to attack on Carter, any Grimes Unit prisoner had ever removed the handle from a push cart and used it to attack another prisoner or guard.
 Carter acknowledged in his deposition that he was unaware of any prior instances where the handle was used as a weapon. *Doc. 48-2 at p. 41*

constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

Carter *speculates* that Huddleston and Johnson knew the push cart had a detachable handle that could be used as a deadly weapon and faults them for allowing it to be unattended in the chow hall. To prevail on this failure to protect claim, Carter must prove that: (1) objectively, he was incarcerated under "conditions posing a substantial risk of serious harm"; and (2) subjectively, Huddleston and Johnson knew of that risk and were "deliberately indifferent" to it. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Eighth Circuit recently provided guidance to lower courts on what "objectively" constitutes "a general condition of confinement that pose[s] an obvious substantial risk of serious harm" to inmates. *Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020). In that case, an inmate attacked Vandevender with a four-by-four post that was accessible to prisoners working in that area. In his failure to protect claim, Vandevender argued that prison officials had created "a general condition of confinement that posed a substantial risk of serious harm" by allowing lumber to be stored in open, unsecured shelves. *Id.* at 976. The Court held that to prevail on his claim, Vandevender had to "show that he was faced with a pervasive risk of harm and that the prison officials failed to respond reasonably to that risk." *Id.* at 977 (*quoting Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir. 1992) (omitting

internal quotes).  A single or isolated incident is not ordinarily sufficient to establish a "pervasive risk of harm."  *Id.* (quoting *Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir. 1991)).

Here, the prisoner who detached the metal handle from the push cart and used it as a weapon against Carter did so spontaneously, in a surprise attack.  All of the evidence establishes that it was an isolated occurrence that had *not* previously occurred at the Grimes Unit.  Carter himself testified that, prior to being attacked, he had never heard of a prisoner detaching a push cart handle and using it as a weapon.

Thus, the Court concludes that no reasonable fact finder could fairly infer that, "objectively," leaving a push cart in the chow hall, without its metal handle being welded or bolted in place, created a substantial or pervasive risk of harm to inmates.[8]

Carter argues that Huddleston and Johnson, as managers, are "ultimately responsible" for all food service employees and inmates working in the kitchen and

---

[8] The facts in this case are strikingly similar to those in *Vandevender*.  They are also easily distinguishable from those involved in other cases finding Eighth Amendment violations "when prison officials permit inmates access to objects that could be used as weapons, especially when accompanied by a lack of adequate supervision over the inmates."  *Iwanski v. Oklahoma Dept. of Corrections,* 201 F.3d 448, at *4-5 (10th Cir. 1999) (unpublished) (finding disputed fact questions as to whether prison officials were deliberately indifferent to the risk created by storing two-foot long steel pipes in an area that was readily accessible to prisoners, one of whom used a piece of that pipe to beat another inmate to death);  *Smith v. Arkansas Dept. of Correction*, 103 F.3d 637, 641, 648-50 (8th Cir. 1996) (affirming denial of summary judgment on qualified immunity grounds where allegations included inadequate supervision and failure to control access to hobby knives, the dangerousness of which officials were aware).  In both of those cases, it was readily apparent to prison officials that the short segments of steel pipe and hobby knives were *obvious deadly weapons* that inmates might use against each other.

7

for the hazard created by the unsupervised push cart in the chow hall. *Doc. 54 at p. 3*. In making this argument, Carter overlooks the fact that there was *nothing obvious* about leaving an unsupervised push cart in the chow hall which suggested it might pose any danger to prisoners.

Carter also argues that Huddleston and Johnson violated the ADC policy requiring "tools, knives, and implements" to be accounted for at all times and, when not in use, to be locked and inaccessible to inmates. First, it is extremely unlikely that the detachable handle on the push cart qualifies as a "tool, knife or implement." The policy refers to items that are *obvious weapons*, rather than objects that a clever inmate might be able to visualize as a weapon. However, even if the push cart handle was covered by the ADC policy governing "tools, knives, and implements," the Eighth Circuit has "repeatedly held that violations of prison policy or regulations alone are *not* enough to establish deliberate indifference under the Eighth Amendment." *Vandevender,* 970 F.3d at 978 (citing cases).

At most, Carter's allegations might support of his failure to protect claim might support a finding of negligence against Huddleston and Johnson, but *not* the far higher deliberate indifference standard required to state a plausible constitutional claim under § 1983. *See Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003); *Tucker*, 276 F.3d at 1002.

As the Court explained in *Vandevender*:

> Inmates bent on assaulting other inmates will use even the most harmless objects as weapons. . . . Given the wooden boards' legitimate use in the North Industry area, absent specific allegations of enough prior assaults to create an inference of a pervasive risk, Vandevender's Amended Complaint alleges no more than a surprise inmate-on-inmate attack. . . . Although the outcome was tragic, and an assault with this weapon was, in hindsight, no doubt avoidable, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of [Eighth Amendment] punishment. *Farmer*, 511 U.S. at 838, 114 S. Ct. 1970.

*Id*. 970 F.3d at 978 (omitting other citations).

At the time of the attack, the push cart was being used for its intended purpose of carrying trash cans to and from the chow hall. With the benefit of hindsight, it is now clear that the push cart's removeable handle posed a hard to foresee risk to inmates because a strong prisoner could remove it and then wield it as a weapon -- something that had never happened at the Grimes Unit before Carter was attacked on July 6, 2018. Thus, nothing about the push cart's presence in the chow hall created an "objectively" serious risk of harm to inmate safety.[9]

There simply is no evidence from which a reasonable finder of fact could find that either Huddleston or Johnson violated Carter's constitutional rights. Accordingly, Huddleston and Johnson are entitled to summary judgment on the

---

[9] Thus, it is not necessary to analyze, "subjectively," whether Huddleston or Johnson knew of the risk but disregarded it.

failure to protect claims Carter has asserted against them, in their individual capacities, and those claims should be dismissed, with prejudice.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendant Huddleston and Johnson's Motion for Summary Judgment, *Doc.46*, be GRANTED, and Carter's claims against them be DISMISSED, WITH PREJUDICE.

Dated this 2nd day of December, 2020.

_____
UNITED STATES MAGISTRATE JUDGE